UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

Farshad Khademi,                                    Case No. 24 cv 5130

               Plaintiff,

                                  **COMPLAINT**

      -against-
                                   Jury Trial Demanded

AANIKA Biosciences, Inc., Vishaal Bhuyan,
and Ellen Jorgenson,

               Defendants.


_____


       Plaintiff Farshad Khademi ("Plaintiff" or "Khademi") by and through his attorney Nisar

Law Group, PC complaining of AANIKA BIOSCIENCES, INC., Vishaal Bhuyan and Ellen

Jorgenson (collectively, "Defendants") alleges as follows:

NATURE OF THE CASE

       The Americans with Disabilities Act, 42 USC §12101 as amend 2008 et seq. ("ADA"),

NYS Exec. Law §296 et seq. (NYS HRL), and New York City Human Rights Law Administrative

Code 8-107 et seq. ("NYC HRL") prohibit 1) termination from employment based on disability

and 2) discrimination based on disability concerning the provision of reasonable accommodations

to perform essential duties of any employee's position and 3) retaliation for protected activities

including but not limited to: opposing the employer's unlawful employment practices and/or filing

a worker's compensation claim. As set forth *infra*, in violation of these federal, state and NYC

statutes, Defendants discharged Plaintiff for requesting accommodations for his disability which

was caused by Defendants and terminating Plaintiff based on his disability on or about August 30,

2022. Defendants retaliated against Plaintiff for protected activity or opposing the Defendant

AANIKA's unlawful employment practice of: (a) assigning him dangerous physical tasks that were

1

outside of his job duties based on his male sex/gender; and b) denying Plaintiff's rights to apply his accrued PTO / sick hours for medical treatment or requests for work schedule modifications. Defendants further failed to engage in the interactive process of providing a work accommodation in violation of the ADA and NYS HRL and independently actionable under NYC HRL.

Plaintiff was adversely impacted by his discharge after his disability diagnosis as Plaintiff did not have an opportunity to find other employment and because Plaintiff was required to disclose his disability and discharged status on employment applications. To date, no employer has offered employment despite numerous employment applications for comparable employment. Defendants Vishal Bhuyan ("Bhuyan"), founder and Chief Executive Officer ("CEO") and Chief Science Officer ("CSO") Ellen Jorgenson ("Jorgenson") are individually liable for discrimination and retaliation based on their ownership shares of AANIKA and their direct actions that discriminated and retaliated or aided and abetted in the discrimination and retaliation against Plaintiff that resulted in disabling injuries and damages to Plaintiff. As a result, Plaintiff suffered emotional distress or mental anguish including but not limited to: depression, hopelessness, sleeplessness, anxiety, distress and loss of enjoyment of life because of his inability to sustain himself and his medical costs. Accordingly, Plaintiff seeks back pay, front pay, compensatory including emotional distress or mental anguish damages, punitive damages statutory attorney fees and costs from Defendants jointly and severally.

<u>JURISDICTION</u>

1.    This Court has original jurisdiction over this action pursuant to 28 USC §1331 and Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 USC §12101 et seq.

2.      Plaintiff filed charges of discrimination upon which the ADA claims in this Complaint are based with the Equal Employment Opportunity Commission ("EEOC").

3.      Plaintiff received a Notice of Right to Sue from the EEOC dated May 31, 2024.

4.      The instant complaint was timely filed within 90 days of the Notice of Right to Sue.

5.      Pursuant to 28 USC §1367(a) this Court has supplemental jurisdiction over the New York state law claims under NYS Exec. Law §296 et seq., and NYC HRL, NYC Administrative Code 8-107 et seq.

6.      This Court may properly maintain personal jurisdiction over this foreign Defendant AANIKA that is authorized to do business in the state of New York under Rule 4 of the Federal Rules of Civil Procedure because Defendant's contacts with this state and this judicial district are sufficient for exercise of jurisdiction so as to comply with traditional notions of fair play and substantial justice.  Based upon information and belief, during the relevant time period Defendant maintained an office location with an address of 86 34th Street, Suite D-605, Brooklyn, NY 11232 where Plaintiff was employed, terminated and suffered his physical work related injuries that caused his disability from which this case arose.

7.      Venue in this district is proper under 28 USC §1391 because all or a substantial part of the events or omissions giving rise to the claims occurred in this district as set forth *infra*.   Moreover, during the relevant time period Plaintiff worked at Defendant's facility located in Kings County along with Defendants Bhuyan and Jorgenson.

<u>STATEMENT OF FACTS</u>

<u>The Parties</u>

<u>Defendants:</u>

8.      Based upon information and belief, AANIKA BIOSCIENCES, INC. ("AANIKA") was a foreign corporation authorized to do business in the state of New York (NY) to date.

9.      Based upon information and belief, Defendant employs over fifteen (15) full time employees in the United States and globally.

10.     Based upon information and belief, Defendant operates an agricultural fermentation or bio mass production facility at its office located at 86 34th Street, Suite D-605, Brooklyn, NY 11232, Kings County, New York State.

11.     Based upon information and belief, Defendant sells agricultural biological mass ("bio-mass") products and services across multiple states including New York within the United States affecting interstate commerce.

12.     Based upon information and belief, Vishaal Bhuyan ("Bhuyan") was a founder, chair executive officer and general manager of AANIKA during the relevant time period of Plaintiff's employment to date.

13.     As an officer of Defendant ANNIKA and/or supervisor of Plaintiff, Bhuyan acted directly and/or aided and abetted in the discrimination and retaliation against Plaintiff that resulted in Plaintiff's discharge and was therefore individually liable for injury and damages to Plaintiff employee under the ADA, NYS HRL and NYC HRL.

14.     Bhuyan directly and verbally discharged Plaintiff on or about August 30, 2022 shortly after Plaintiff requested the additional application of his accrued paid time off ("PTO")/sick hours to attend physician ordered and medically prescribed physical therapy sessions for his workplace injuries sustained on or about May 18, 2022.

15.     Based upon information and belief Ellen Jorgenson ("Jorgenson") was a chief scientific officer ("CSO") of ANNIKA during the relevant time period of Plaintiff's employment with AANIKA.

16.     As an officer of Defendant AANIKA and supervisor of Plaintiff, Jorgenson acted directly and/or aided and abetted in the discrimination and retaliation against Plaintiff that resulted in Plaintiff's discharge and was therefore individually liable for injury and damages to Plaintiff employee under the ADA, NYS HRL and NYC HRL.

17.     On or about May 18, 2022, Jorgenson directed Plaintiff to move a large shaker machine weighing over 200 lbs. ("subject machine") used in another male scientist's laboratory to the street by himself, to discard it. When the other male scientist lifted the machine with Plaintiff, he placed the entire weight of the machine onto Plaintiff which caused Plaintiff to fall onto the floor with the machine falling on top of Plaintiff. ("subject incident").

18.     Jorgenson was present during /witnessed the subject incident.  There were several female scientists who were also present during / witnessed the subject incident but none of them including Jorgenson offered to assist Plaintiff to get the machine off of him so he could get up or call for medical assistance.  Instead, Jorgenson callously walked away from Plaintiff who was on the floor with the machine on top of him as if nothing happened.

19.     Based upon information and belief, Jorgenson and Bhuyan unreasonably ordered Plaintiff to remove an excessively heavy machine that caused disabling injuries to Plaintiff to avoid the cost of hiring movers or an industrial waste removal company with physically qualified staff with proper tools.

20.     Jorgenson and Bhuyan unreasonably ordered Plaintiff to remove the excessively heavy machine that caused him disabling injuries solely because he was a male employee approximately 6 feet tall and 200lbs and unreasonably ordered him to move a machine that was greater than his body weight.

21.    Jorgenson and Bhuyan did not order the majority female staff scientists who were relatively smaller in physical stature to move or assist Plaintiff with moving the subject machine.

22.    But for Plaintiff's male sex/gender, Jorgenson and Bhuyan would not have ordered Plaintiff to move the subject machine that was proximate cause of his subject injuries.

23.    Based upon information and belief Josh Koch ("Koch") was ANNIKA's chief people officer or director of human resources ("HR") during the relevant time period of Plaintiff's employment.

24.    On or about May 18, 2022, Plaintiff notified Koch of the injuries he sustained as a result of being ordered by Jorgenson and Bhuyan to move an excessively heavy machine that caused him to fall.

25.    On or about May 19, 2022, in response to Plaintiff's notification of his workplace injuries sustained the previous day, Koch instructed Plaintiff to apply his accrued PTO / sick hours for time Plaintiff needed for medical appointments and/or to recover.

26.    On or about July 2022, Koch warned Plaintiff that he was taking too many hours to go to medical appointments and physical therapy.  Because Plaintiff realized Koch did not take his physical injuries seriously, Plaintiff informed his physician of Koch's warnings.  Shortly thereafter, Plaintiff's physician sent a letter to Defendants stating that Plaintiff required physical therapy and medical appointments to recover and was also required by the insurance company.  Plaintiff opposed and protested AANIKA's practice of denying PTO/sick hours for physician and insurance company mandated physical therapy sessions and medical appointments.

27.    Koch was present on August 30, 2022 when Bhuyan verbally terminated Plaintiff at AANIKA's Brooklyn, NY offices shortly after requesting the application of his accrued PTO/sick hours to attend physical therapy sessions and medical appointments.

28.     On or about August 30, 2022, Koch emailed Plaintiff to confirm that his employment with AANIKA was terminated.

29.     At all relevant times, Defendants aided and abetted or acted in concert to discriminated and retaliate against Plaintiff.

30.     At all relevant times, AANIKA had corporate knowledge or were aware of and liable for the conduct of its employees including Bhuyan, Jorgenson and Koch.

31.     At all relevant times, Defendants were aware of the discriminatory conduct and retaliation as detailed throughout this Complaint, that was perpetrated against Plaintiff based on his sex/gender and disability and were jointly and severally liable for damages to Plaintiff under the ADA, NYSHRL and NYCHRL and for proximately causing Plaintiff's subject injuries as a result of their discrimination based on Plaintiff's male sex/gender and damages to Plaintiff as a result.

<u>Plaintiff</u>

32.     Plaintiff was employed by Defendant AANIKA as "lead fermentation scientist" from on or about January 2022 to on or about August 30, 2022 when he was terminated from his employment shortly after requesting application of his accrued PTO/sick hours to attend physical therapy sessions and medical appointments for his subject injuries.

33.     During the relevant time period, Plaintiff possessed a PhD, three postdoctoral fellowships, with over twenty three (23) years of experience in molecular microbial biology and pharmaceutical biotechnology.

34.     Plaintiff's responsibilities included designing and leading staff in the implementation of fermentation processes at ANNIKA's production facility and to grow or produce biological mass ("bio-mass") sold to customers for agricultural use.  Plaintiff's responsibilities further included

providing technical advice to customers, assisting in the patent applications and contracts and projects requiring fermentation/bioreaction expertise.

35.    Plaintiff's duties also entailed light manual duties of preparing and placing cells into bio reactors for bio-mass growth or production.

36.    Plaintiff was not provided with any notice whatsoever at the time of hire or prior to May 18, 2022 (date of subject incident set forth *infra*) that the physical movement of heavy industrial machines such as the subject machine was part of Plaintiff's job title or duties.

37.    During the relevant time period of Plaintiff's employment, Plaintiff worked at Defendant's facility located in Brooklyn, Kings County, New York.

38.    Prior to May 18, 2022, Plaintiff did not have any history of workplace discipline or any other unsatisfactory work performance.

39.    Prior to the subject injuries that Plaintiff sustained on or about May 18, 2022, Bhuyan pleaded with Plaintiff to work on the weekends at Defendant's offices on legislative matters that entailed drafting grant proposals.

40.    Since Plaintiff's termination from employment, he has applied for jobs, has had to disclose that he is disabled and was discharged from his last employment.  To date, Plaintiff has not been offered any employment despite submitting numerous applications for comparable work.

Plaintiff's subject injuries and disability

41.    On or about May 18, 2022, Plaintiff was directed by Jorgensen to lift and move the subject machine ("shaker" machine that weighed in excess of 200 pounds) to the street by himself in order to discard it.  The subject machine was neither used for any part of Plaintiff's work nor any part Plaintiff's work duties.    A scientist named Jamie Richards ("Richards") who headed the department that used the subject machine, initially attempted to lift the subject machine with

Plaintiff. Based on Jorgenson's orders, Richards shifted the entire weight of the subject machine onto Plaintiff for Plaintiff to carry the machine outside by himself. After Richards shifted the entire weight of the machine onto Plaintiff, it caused Plaintiff to fall onto the floor with the machine falling on top of him ("subject incident" or "May 18, 2022 incident"). As a result, Plaintiff sustained serious, disabling injuries to his left knee, lower spine and upper back (thoracic spine injuries) ("subject injuries" or "work related injuries" or "injuries").

42. None of the majority female staff present during the subject incident or Jorgenson offered or attempted to assist Plaintiff by moving the machine off of Plaintiff or calling for medical assistance. Plaintiff was required to move the machine off of him by himself, get up by himself and go seek medical help by himself.

43. The subject injuries subsequently rendered Plaintiff disabled under his physician's diagnosis issued on or about July 2022 based on MRIs.

44. Plaintiff was not provided proper assistance, equipment or tools to move the subject machine on or about May 18, 2022.

45. But for Defendant's improper and unlawful order to Plaintiff on or about May 18, 2022 to move the subject machine, Plaintiff would not have suffered his subject injuries and would not have been rendered disabled.

46. Based upon information and belief, neither Jorgenson nor Bhuyan ordered any female staff / scientists to move or assist in moving the subject machine on or about May 18, 2022.

47. But for Plaintiff's male sex / gender with attributes of relatively larger height (approximately 6 feet) and/or weight (approximately 200 lbs) than his female co-workers / scientists, neither Jorgenson nor Bhuyan would have ordered Plaintiff to move the subject machine from the lab to the street by himself.

48.    Defendants' unreasonable and unlawful order to Plaintiff to move the subject machine on or about May 18, 2022 was the proximate or direct cause of Plaintiff's subject injuries and the subsequent disability diagnosis.

49.    After Plaintiff's initial medical examination on or about May 18, 2023, Plaintiff was diagnosed with a sprained left knee and torn meniscus as well as a spinal injuries to his lower and upper back that caused extreme pain and numbness in his extremities.

50.    In an email dated on or about about May 18, 2022, Plaintiff informed Defendants and COS Koch of his medical condition or diagnosed injuries and that it was the result of Defendants' unreasonable and improper practice of assigning dangerous physical tasks to Plaintiff.  In a reply email dated on or about May 19, 2022, Koch instructed Plaintiff to apply his PTO / sick hours for time required to recover and attend medical appointments.

51.    As a result of Plaintiff's injuries and pursuant to medical doctors' orders, Plaintiff was caused to be out of work or stay home for approximately one week.

52.    At all relevant times, Defendants were aware or had corporate knowledge of Plaintiff's actual or perceived disability because a)  Defendant Jorgensen ordered Plaintiff to move the subject machine, witnessed the subject incident / fall that caused his injuries on or about May 18, 2022 and callously walked away without offering to help Plaintiff get up from the floor; and b) Plaintiff confirmed the subject incident via email exchanges with Bhuyan and Koch on or about May 18 and May 19, 2022; and c) Plaintiff filed a worker's compensation claim that was, based upon information and belief noticed to Defendant via the worker's compensation board and d) based upon information and belief Defendant's insurance companies that covered Plaintiff's claim communicated with Defendant as well as Plaintiff's treating medical doctors.

53.    In an email dated on or about on or about May 19, 2022, Plaintiff complained to Bhuyan that because of the injuries he sustained the day before, he experienced extreme pain in his joints and was not able to sleep and felt unsteady and lightheaded.

54.    Plaintiff further complained in the email dated on or about May 19, 2022 that the cause of the injuries and pain was, "Thanks to the humiliation of Sr. scientists by asking them to lift and carry a 200 pound old shaker, or a huge autoclave to/from a parking lot on the other side of the street." Plaintiff clearly opposed Defendant's improper employment practices of assigning unreasonable, dangerous and out of duty physical tasks to him.

55.    After returning to work on or about late May or early June 2022, Plaintiff was prescribed physical therapy sessions two days per week during the months of July and August 2022 and required to attend follow up medical appointments.

56.    After returning to work, Plaintiff was capable of performing his essential work duties of designing fermentation processes and growing bio-mass with or without an accommodation.

57.    The Defendant discriminatorily denied Plaintiff an accommodation because Defendant was resistant to a reasonable modification of Plaintiff's work schedule to make up the work hours used for physical therapy and medical appointments. Also, Defendant could no longer order Plaintiff to perform out of duty physical tasks to cut its labor costs in hiring additional staff or professionals to properly and safely perform such tasks.

58.    Defendants' denial of a reasonable accommodation was malicious because it could no longer direct Plaintiff to suffer and perform unreasonable out of duty physical tasks such as moving the subject machine in order to cut labor costs of hiring proper professional staff such as a heavy industrial waste removal company to safely and properly perform such tasks.

Diagnosis of Disability and Request for Accommodations

59.     On or about July 2022, based on Magnetic Resource Imaging ("MRI") results, Plaintiff's medical doctors diagnosed Plaintiff as disabled.  Accordingly, Plaintiff was prescribed further physical therapy approximately 2 times per week and follow up medical appointments.  Physical therapy and medical appointments were limited to weekdays due to these medical facilities business hours which was beyond Plaintiff's control.

60.     On or about August 29, 2022 Plaintiff sent an email request to CSO Koch for application of his remaining accrued PTO/sick hours of approximately fifteen (15) work days to attend further physical therapy sessions.  Plaintiff included his prescriptions and/or physicians notes for these further physical therapy sessions.

61.     On or about August 30, 2022, shortly after arriving at work, Plaintiff was terminated from his employment and instructed to leave the office by Bhuyan with Koch also present.  Later that day, at approximately 2:14pm, Koch sent an email to Plaintiff to confirm that Plaintiff's employment was terminated and attached a separation agreement that stated ANNIKA "eliminated" Plaintiff's position.  Plaintiff did not agree to the separation agreement.

62.     Under the Americans with Disabilities Act, 42 USC §12101 as amend 2008 et seq. ("ADA"), NYS Exec. Law §296 et seq. ("NYS HRL"), and New York City Human Rights Law Administrative Code 8-107 et seq. ("NYC HRL"), a qualified individual is an individual who, with or without reasonable accommodation, can perform the essential functions of his employment position.

63.     At all relevant times, as alleged throughout this Complaint, Plaintiff was qualified in his position as a scientist with a Phd. and 23 fellowships relevant to this position and could perform the essential functions of his position e.g. designing and implementing the production of bio-mass with or without an accommodation.

64.     The hours of work missed because of physical therapy could have been remedied by a reasonable modification to Plaintiff's work schedule such as remote work or working hours outside of regular office hours such as weekend work hours as suggested by Bhuyan prior to the subject incident. This modification would have been at little to no additional cost to Defendant AANIKA.

65.     As alleged throughout this Complaint, prior to the subject incident, Bhuyan pleaded with Plaintiff to work additional weekend hours to draft grant proposals at ANNIKA's office and therefore access to the facility beyond regular business hours was available to Plaintiff at little to no additional cost to Defendant, at the time he requested an accommodation on or about August 29, 2022.

66.     Without discussing any potential accommodations for Plaintiff's medically prescribed physical therapy sessions and medical appointments, Defendants summarily terminated Plaintiff's employment on or about August 30, 2022.

67.     Defendant's termination was retaliatory because it was in close temporal proximity to Plaintiff's protected activity of: a) opposing and complaining of Defendant's employment practices of assigning him unreasonable physical tasks that were outside of his work duties that resulted in his injuries and subsequent disability; and b) opposing Koch's warning that Plaintiff took too many PTO hours for physical therapy and medical appointments by causing Plaintiff's medical doctor to send a letter on or about July 2022 shortly after Koch's warining, stating that Plaintiff required physical therapy and medical appointments to recover and the insurance co. also required them; After Koch's warning, Plaintiff made his request for an accommodation to apply his accrued PTO sick hours that he had a right to apply; and c) filing a Workers Compensation claim for his subject injuries.

68.    The Second Circuit has long held that three (3) weeks to five (5) months between the protected activity and the adverse employment action is sufficiently close in temporal proximity to satisfy a retaliation claim.  *See, Kwan v. Andalex Grp., LLC*, 737 F3d 834, 845 (2d Cir. 2013)

69.    Defendant retaliated against Plaintiff by discharging him for complaining about Defendant's unlawful employment practices stating in an email dated on or about May 19, 2022 to Bhuyan that Plaintiff's injuries that were sustained and ensuing pain was in relevant part, "Thanks to the humiliation of Sr. scientists by asking them to lift and carry a 200 pound old shaker, or a huge autoclave to/from a parking lot on the other side of the street."  Plaintiff clearly opposed Defendant's improper employment practices of assigning unreasonable, dangerous and out of duty tasks to him and in close temporal proximity discharged on or about August 30, 2022.

70.    Defendant retaliated against Plaintiff when he demanded application of his accrued and remaining PTO hours for treatment or physical therapy sessions as an accommodation after Koch warned Plaintiff that Plaintiff was taking too much time off during business hours for physical therapy and treatment.  Plaintiff opposed Defendants' unyielding policy by explaining that the medical and/or physical therapy office hours were beyond his control and causing his physician to write a letter to Defendants shortly after Koch's warning, stating that plaintiff required physical therapy and the insurance company required it as well.  Thus, on or about August 29, 2022, in need of continuing medical treatment and physical therapy, Plaintiff requested that he apply his accrued and rightful PTO/ sick hours despite Koch's warnings.   The next day, on or about August 30, 2022, Bhuyan discharged Plaintiff in the presence of Koch, soon after Plaintiff arrived at the office without any discussion of any accommodation for his disability.

71.    As alleged throughout this Complaint, without placing undue burden on Defendants, there were several work schedule modification options available at the time of Plaintiff's termination to

make up for work hours missed due to physical therapy and medical appointments at little to no additional cost to Defendant.

72.    In addition to working weekend hours as alleged *supra*, there could have been a hybrid remote / in person work option as Plaintiff's work was intellectual in nature with light manual duties and could have been implemented at insignificant to zero additional cost to Defendant. Moreover, Plaintiff held a Ph.D. with decades of experience as a lead scientist and biotechnology processing advisor.  Plaintiff was hired for a lead position with Defendant, therefore, Plaintiff could have worked remotely for a portion of the work days to supervise staff.

73.    Another work schedule modification could have entailed Plaintiff coming back to work after an appointment and working beyond the regular office hours.  This and other similar work schedule modifications were available at little to zero additional costs to Defendant.

74.    Based upon information and belief, Defendants had no business necessity to discharge Plaintiff on or about August 30, 2022 because prior to his disability status, Plaintiff had no history of discipline and a satisfactory work performance history.

75.    Based upon information and belief, after Plaintiff applied PTO hours to attend medical appointments and/or physical therapy, Defendant retaliated by placing disciplinary notes to Plaintiff's employment file for taking PTO and warned Plaintiff to stop going to medical appointments.

76.    Defendant retaliated against Plaintiff for increasing its costs of insurance by filing a worker's compensation claim, demanding medical treatment, and demanding PTO that Plaintiff had accrued as an accommodation.

77.    By terminating Plaintiff, Defendants shirked their responsibility of remedying Plaintiff's subject injuries which were caused by Defendants' own malicious and unreasonable conduct of

ordering Plaintiff to perform an unreasonably dangerous out of duty task of removing the subject machine which directly or proximately caused Plaintiff to sustain serious disabling injuries.

78.    By eliminating Plaintiff's position on or about August 30, 2022, Defendant created a pretextual business reason to discharge Plaintiff based on his disability and/or request for an accommodation and/or to retaliate against Plaintiff for requesting an accommodation and opposing its unlawful business practices.

79.    But for Defendant's male sex/gender, Defendant would not have been ordered to move the unreasonably heavy subject machine which directly and proximately caused his serious and disabling injuries on or about May 18, 2022.

80.    But for Plaintiff's disability caused by Defendant, Plaintiff would not have been terminated from employment.

81.    But for Plaintiff's request for accommodations for his disability / subject injuries, Plaintiff would not have been terminated from his employment.

82.    But for Plaintiff's opposition to Defendants' unlawful employment practices including but not limited to: unlawfully assigning Plaintiff to remove the subject machine, that caused Plaintiff's disability; and unlawfully denying modified work schedules to accommodate Plaintiff's physical therapy sessions and medical appointments for the disability caused by Defendants, Plaintiff would not have been terminated from his employment.

83.    But for Plaintiff seeking medical treatment and physical therapy for his subject injuries, Plaintiff would not have been terminated from his employment.

84.    Plaintiff was treated differently and adversely because of his male sex/gender than his female co-workers because Defendant did not order other female employees to move or assist in

moving excessively heavy machines such as the subject machine on May 18, 2022 that caused Plaintiff to sustain disabling physical injuries.

85.    Plaintiff was treated differently and adversely because of his male sex/gender than his female co-workers after Plaintiff sustained his disabling subject injuries and ultimately discharged because Defendants could no longer order him to perform unreasonable physical tasks in order to cut labor costs in hiring professional movers or a heavy industrial waste removal company to safely and properly perform such tasks.

86.    Plaintiff was severely disadvantaged by his discharge because it was sudden and Plaintiff was not able to obtain alternative employment prior to his discharge.

87.    Plaintiff was severely disadvantaged by his discharge based on his disability which was caused by Defendant.   Plaintiff had to disclose his disability and discharged status which were caused by Defendants, on his employment applications. Despite submitting numerous applications for comparable employment, Plaintiff has not been offered any employment to date.

88.    As a result of Defendants' retaliatory conduct and discharge, Plaintiff has suffered emotional distress or mental anguish including but not limited to: depression, hopelessness, sadness, sleeplessness, anxiety, distress and loss of enjoyment of life because of his inability to sustain himself and his medical costs.

89.    Based on Defendants' discriminatory conduct based on his male sex / gender that caused his subject injuries and disability, Plaintiff suffered physical pain, numbness in his extremities and emotional distress or mental anguish including but not limited to: humiliation, depression, hopelessness, sadness, sleeplessness, anxiety and loss of enjoyment of life.

90.    Based on Defendant's discriminatory and/or retaliatory discharge without discussing reasonable accommodations for his disability that were available to Plaintiff; and summarily

denying any all accommodations for Plaintiff's disability that Defendant proximately caused; and treating Plaintiff differently based on his disability and sex/gender; and discrimination based on Plaintiff's male sex/gender that caused his disabling subject injuries,

91.    Accordingly, Plaintiff seeks back pay, front pay, compensatory including emotional distress or mental anguish damages, punitive damages and statutory attorneys fees and costs.

## FIRST CAUSE OF ACTION

Discrimination based on disability pursuant to the Americans with Disabilities Act as amended by ADA Amendment Act of 2008 ("ADA"), 42 USC §12101 et seq

92.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

93.    The Americans with Disabilities Act was amended by the ADA Amendment Act of 2008 ("ADA"), 42 USC §12101 et seq. and went into effect as of January 1, 2009.

94.    The ADA 42 USC §12112 states in relevant part, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to…discharge of employees, employee compensation…and other terms, conditions and privileges of employment.

95.    Under the ADA a covered entity means an "employer" which is a person engaged in an industry affecting commerce who has 15 or more employees. *See*, 42 USC §12111(2)

96.    Based upon information and belief, Defendant has over 15 fifteen full time employees globally and within the United States.

97.    Based upon information and belief, Defendant sells bio-mass products and services globally and across multiple states including New York within the United States affecting interstate commerce.

98.    Defendant was on notice or should have known of Plaintiff's subject incident and subject injuries and/or disability as CSO Jorgensen directed Plaintiff to move the subject machine and witnessed the subject incident that caused Plaintiff's subject injuries on or about May 18, 2022;

Plaintiff confirmed the subject incident via email with Defendant Bhuyan and COS Koch on or about May 19, 2022; and based upon information and belief, Plaintiff filed a worker's compensation claim that was noticed to Defendant by the worker's compensation board and/or its insurance companies that covered Plaintiff's claim; and on or about July 2022, Plaintiff's medical doctor sent a letter to Defendants stating Plaintiff required physical therapy and medical appointments to recover and was also required by the insurance co.

99.    Plaintiff had to take approximately one week off from work to seek medical treatment for those injuries and Plaintiff exchanged email communications on or about May 19, 2022 with Koch and Bhuyan about the subject incident as well as application of Plaintiff's accrued PTO and sick hours to be applied for time off to obtain medical treatment and/or physical therapy sessions.

100.    After Plaintiff's return to work on or about June 2022, Plaintiff was prescribed physical therapy sessions two days per week during the months of July and August 2022.

101.    On or about July 2022  Plaintiff's physicians diagnosed Plaintiff as disabled based on MRIs.

102.     Accordingly, Plaintiff was prescribed further physical therapy sessions approximately 2 times per week.  Physical therapy and medical appointments were limited to weekdays due to these facilities' offices hours which was the reason for Plaintiff's request to apply his accrued and unused PTO.

103.    Under the ADA, a "disability" with respect to an individual is defined as (i) a physical impairment that substantially limits one or more of the major life activities of such individual; (ii) A record of such an impairment; or (iii) Being regarded as having such an impairment.  *See*, 42 USC §12102; 28 CFR §35.108. (a)(1)(i), (ii), (iii)

104.    Plaintiff may establish coverage under the ADA on one or more the three prongs of the definition of disability.  28 CFR §35.108(a)(2)(ii)

105.    Under the ADA, the term physical impairment means in relevant part, "any physiological disorder or condition,…or anatomical loss affecting one or more body systems, such as: neurological, musculoskeletal, special sense organs, respiratory…, cardiovascular,….immune, circulatory, hemic, lymphatic…"   28 CFR §35.108 (b)(1)(i)

106.    Plaintiff was diagnosed with his subject injuries on or about May 18, 2022 adversely impacting his musculoskeletal system including but not limited to: left knee meniscus tear, injuries to the upper and lower back.  On or about July 2022, Plaintiff was diagnosed as disabled based on the aforementioned injuries or subject injuries.

107.    Under the ADA, the term physical impairment includes but is not limited to noncontagious diseases and conductions such as "orthopedic."  28 CFR §35.108 (b)(2)

108.    Plaintiff's subject injuries to his spine and left knee joint were orthopedic as it impacted his ability to move around.

109.    Under the ADA, the term major life activities include but are not limit to:  "performing manual tasks, walking, standing, sitting, reaching, lifting, bending, … concentrating…and working.  See, 42 USC §12102 (2)(A); 28 CFR §35.108 (c)(1)(i)

110.    Plaintiff's subject injuries or disability impacted major life activities including but not limited to: performing heavy manual tasks, walking, standing, sitting, lifting heavy objects and bending.

111.    The ADA requires that the construction of the definition broadly, to the maximum extent permitted under the law in favor of expansive coverage.  See, 42 USC §12102 (4)(A); 28 CFR §35.108 (a)(2)(i)

112.    At all relevant times, Plaintiff was a covered individual under the ADA.

113.    Under the ADA, a qualified individual is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 USC §12111(8)

114.    As alleged throughout this Complaint,  Plaintiff was a qualified individual meaning with or without an accommodation Plaintiff was capable of performing the essential functions of his duties which was to design fermentation processes and produce bio-mass to sell to agricultural clients.

115.    As alleged throughout this Complaint, on or about August 29, 2023, Plaintiff requested an accommodation to apply his accrued remaining 15 days of PTO to attend further physical therapy sessions and medical examinations approximately twice per week for his disability/injuries.

116.    Under the ADA, "reasonable accommodation" may include: "(A) making existing facilities used by employees readily accessible to and usable….and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, …and other similar accommodations."  42 USC §12111(9)

117.    Under the ADA, factors to be considered in determining whether an accommodation would impose an undue hardship may include: "(i) the nature and cost of the accommodation…; overall financial resources of the facility…; …(iv) the type of operation …of the covered entity…."

118.    Plaintiff did not require changes to existing facilities but as alleged throughout this Complaint, Plaintiff required work schedule modifications, reassignment or job restructuring or other similar accommodations.

119.    As alleged throughout this Complaint, several work schedule modification options to make up for work hours missed due to physical therapy and medical appointments were available at the time Plaintiff was terminated at little to no additional cost to Defendant.

120.    For instance, Plaintiff was capable of making up the hours missed due to physical therapy and/or medical appointments over the weekend.   This was a viable option as prior to the subject workplace incident that caused his subject injuries on or about May 18, 2023, Bhuyan pleaded with Plaintiff to work weekend hours to perform regulatory work.   Therefore, the facility was accessible to Plaintiff at minimal cost to no additional cost to Defendant.

121.    Since Plaintiff's duties were significantly intellectual in nature with light manual duties, there could have been a hybrid remote / in person option implemented at insignificant to no additional cost to Defendant.  Plaintiff held a Ph.D. with decades of experience as a scientist and was hired for a lead position with Defendant, therefore, Plaintiff could have worked remotely to supervise staff for a portion of the work days.

122.    Another work schedule modification could have entailed Plaintiff coming back to work after an appointment and working beyond the regular office hours.  This similarly would have been at little to no additional costs to Defendant.

123.    As alleged throughout this Complaint, on or about August 30, 2023, Defendant discriminated against Plaintiff, a qualified individual, on the basis of his disability by summarily denying any accommodations and terminating Plaintiff without any consideration or acknowledgment of Plaintiff's request for an accommodation on or about August 29, 2023.

124.    Prior to Plaintiff's subject injuries / disability, Defendant had no business necessity to discharge Plaintiff because he had no history of discipline or unsatisfactory work performance.

125.    Defendant discharged Plaintiff because of his disability and because he was a disabled male employee to whom Defendant could no longer assign unreasonable physical tasks to cut labor costs in hiring professionals such as a heavy industrial waste removal company or movers to properly and safely remove and discard Defendant ANNIKA's industrial waste.

126.    Based upon information and belief, other female scientists were not assigned duties to remove or assist in removing heavy objects such as a shaker machine in excess of 200lbs.

127.    Based upon information and belief, non-disabled male scientists were not summarily discharged or had their job position and title eliminated during the relevant time period.

128.    As alleged throughout this complaint, Defendants had knowledge of Plaintiff's disability at all relevant times or should have known Plaintiff would need an accommodation for his disability since CSO Jorgenson ordered Plaintiff to move the subject machine and witnessed the subject incident.  Jorgenson also witnessed Plaintiff have difficulty moving the machine off of him and getting up from the floor without Jorgenson or any other employee assisting or attempting to assist Plaintiff.  Moreover, Plaintiff exchanged emails with Bhuyan and Koch about the subject incident and subject injuries shortly after the subject incident on or about May 18, 2022.

129.    But for Plaintiff's disability caused by Defendants, Plaintiff would not have been terminated from employment.

130.    But for Plaintiff's request for accommodations for his disability caused by Defendants, Plaintiff would not have been terminated from his employment.

131.    But for Plaintiff seeking medical treatment and physical therapy for his disability / subject injuries, Plaintiff would not have been terminated from his employment.

132.    But for Plaintiff's opposition to Defendant's unlawful employment practices as alleged throughout this Complaint, Plaintiff would not have been terminated from his employment.

133.    As a result of this retaliation and discharge, Plaintiff has suffered emotional distress and mental anguish including but not limited to: depression, anxiety, hopelessness, sadness, sleeplessness and loss of enjoyment of life because he has not been able to obtain comparable

employment despite numerous job applications that required disclosure of his disability and discharged status.

134.   Based on Defendant's discriminatory discharge of Plaintiff on or about August 30, 2022, Plaintiff seeks back pay; front pay, compensatory including emotional distress or mental anguish damages, punitive damages and statutory attorneys fees and costs.

## SECOND CAUSE OF ACTION
### Retaliation based on disability under the ADA 42 USC §12203

135.   Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

136.   The ADA 42 USC §12203(a) states in relevant part, "Retaliation - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter.

137.   Under the ADA, an employer is liable for retaliation based on disability against an employee when it was aware of the employee engaging in a protected activity; and the employer took adverse employment action against the employee; and a causal connection or close temporal proximity exists between the alleged adverse action and the protected activity.

138.   The temporal proximity between a Plaintiff's protected activity and the employer's adverse employment action taken against a Plaintiff creates a prima facie inference of retaliation.

139.   As alleged throughout this Complaint, Defendant discharged Plaintiff on or about August 30, 2022 which was within one (1) day from the date Plaintiff requested an accommodation of applying his accrued PTO for physical therapy and medical appointments on August 29, 2022 in protest to Koch's prior warnings in July 2022 that Plaintiff took too much PTO for medical appointments.  This discharge was also in close proximity the letter sent to Defendants by Plaintiff's

physician shortly after Koch's warning, that physical therapy was required for Plaintiff's recovery and by the insurance company.

140.    As alleged throughout this Complaint, on or about August 2022, Plaintiff's physician wrote a letter to Defendants stating that Plaintiff required physical therapy sessions for his recovery and was required by the insurance company in response and in opposition to Koch's warnings to Plaintiff that he was taking too much time off for medical appointments and/or physical therapy.

141.    As alleged throughout this complaint, on or about May 19, 2022, Plaintiff complained to Bhuyan that because of the injuries he sustained the day before, he experienced extreme pain in his joints and was not able to sleep, unsteady and lightheaded.  Plaintiff further complained that the cause of the injuries and pain was,  "Thanks to the humiliation of Sr. scientists by asking them to lift and carry a 200 pound old shaker, or a huge autoclave to/from a parking lot on the other side of the street."  Plaintiff clearly opposed Defendant's improper employment practices of assigning dangerous and out of duty tasks to him.  Approximately 3 months later, Plaintiff was discharged.

142.    The Second Circuit has held that a temporal proximity of three (3) weeks to five (5) months is sufficient to constitute close temporal proximity to establish a claim of retaliation.  *See, e.g. Kwan v. Andalex Grp., LLC*, 737 F3d 834, 845 (2d Cir., 2013)

143.    As alleged throughout this Complaint, Plaintiff was terminated on or about August 30, 2022, approximately three (3) months after seeking medical treatment for the subject injuries/disability and opposing employment practices on or about May 19, 2022 that unlawfully denied and/or disciplined and/or penalized Plaintiff for engaging in protected activities.

144.    Based upon information and belief, after Plaintiff applied his accrued sick hours and/or accrued PTO hours to attend medical appointments and/or physical therapy, Defendant retaliated by

placing a disciplinary note to Plaintiff's employment file and warned Plaintiff for taking too much paid time off for medical purposes.

145.    As alleged throughout this complaint, Plaintiff was diagnosed as disabled on or about July 2022 and prescribed physical therapy beyond July and August 2022.  Accordingly, on or about August 29, 2022, Plaintiff requested further PTO as an accommodation to treat this subject injuries. The next day, Defendant summarily discharged Plaintiff.

146.    As alleged throughout this Complaint, approximately 3 months after Plaintiff opposed Defendant's improper employment practices of assigning dangerous out of duty tasks to him, Plaintiff was discharged and summarily denied any accommodations to treat his injuries/disability and discharged on August 30, 2022.

147.    As alleged throughout this Complaint, Plaintiff did not have any history of discipline or unsatisfactory work performance prior to the subject incident or subject injuries sustained on or about May 18, 2022.

148.    As alleged throughout this Complaint, prior to the subject incident, Bhuyan pleaded with Plaintiff to perform regulatory work on weekends at Defendant's office.

149.    Defendant had no legitimate business reason to terminate Plaintiff's employment at any relevant time.

150.    Based upon information and belief, Defendant did not order female scientists to remove or assist in removing excessively heavy objects from the Defendant's workplace.

151.    Based upon information and belief, Defendant eliminated Plaintiff's position on or about August 30, 2022 as a pretextual business reason to discharge and retaliate against Plaintiff for requesting an accommodation and opposing its unlawful employment practice of ordering him, a

scientist to perform dangerous out of duty tasks to remove the subject machine to cut labor costs in hiring professionals to properly and safely perform such tasks.

152.    As alleged throughout this complaint, Defendant also retaliated against Plaintiff for opposing Defendant's unlawful business practice of denying accrued and unused PTO and/or sick hours for medical purposes during on or about July and August 2022 by terminating Plaintiff within close proximity to Plaintiff's physician's letter to Defendants that Plaintiff required physical therapy to recover as well as the insurance company and when Plaintiff requested the accommodation of applying his accrued PTO hours after Koch warned Plaintiff that he took too much PTO for medical appointments and/or therapy.

153.    Defendant's adverse employment actions as alleged throughout this complaint, taken against Plaintiff set an oppressive precedent and would deter other employees of Defendant from rightfully refusing to engage in dangerous activities, obtaining necessary medical attention and taking the necessary paid time off from work for work related injuries.

154.    As a result of Defendants' various retaliatory conduct and discharge, Plaintiff has suffered emotional distress and mental anguish including but not limited to: depression, anxiety, hopelessness, sadness, loss of enjoyment of life and sleeplessness in addition to that suffered after his injuries sustained on or about May 18, 2022 because he has not been able to obtain comparable employment despite numerous job applications that required disclosure of his disability and discharged status.

155.    Based on Defendants' retaliation against and discharge of Plaintiff, Plaintiff seeks back pay, front pay, compensatory including emotional distress or mental anguish damages, punitive damages and statutory attorney fees and costs.

### **THIRD CAUSE OF ACTION**
Discrimination based on disability pursuant to NYS Exec. Law §296 et seq.

156.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

157.    New York State Exec. Law ("NYS HRL") §296, states in relevant part, "Employment. It shall be an unlawful discriminatory practice: (a) for an employer…because of the actual or perceived…disability,…of any person, to ….discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

158.    As alleged throughout this Complaint, Plaintiff had a disability and was a qualified employee.

159.    As alleged throughout this Complaint, Plaintiff was qualified for his position with or without reasonable accommodations and he performed substantially all, if not all or the essential requisites of his job duties.

160.    As alleged throughout this Complaint, Plaintiff had a disability that was proximately caused by Defendant on or about May 18, 2022 and therefore Plaintiff was a protected individual under the statute.

161.    As alleged throughout this Complaint, AANIKA's female scientists were not ordered to remove and discard or assist in removing/discarding heavy items from Defendant's offices during the relevant time period of Plaintiff's employment.

162.    As alleged throughout this Complaint and at all relevant times, Defendant had notice of or should have known of Plaintiff's subject injuries and disability since on or about May 18, 2022.

163.    As alleged throughout this Complaint, Defendants were required to provide a reasonable accommodation of a modified work schedule and/or PTO/sick hours for Plaintiff to attend physical therapy sessions and medical appointments for his subject injuries and subsequent disability.

164.    As alleged throughout this Complaint, Defendants were on notice or should have known that Plaintiff required an accommodation to obtain medical treatment and that there were several accommodations available at the time Plaintiff was discharged that would not have posed an undue burden on Defendant.

165.    As alleged throughout this Complaint, Defendant was required to discuss with Plaintiff available accommodations.

166.    As alleged throughout this Complaint, Defendant failed to discuss any accommodations that were available and discharged Plaintiff one (1) day after he requested an accommodation to apply his rightfully accrued PTO/sick hours to attend physical therapy sessions and medical appointments for his disability.

167.    As alleged throughout this complaint, but for Plaintiff's disability, he would not have been discharged.

168.    As alleged throughout this complaint, Defendants elimination of Plaintiff's position was a pretextual reason to discriminate and discharge Plaintiff based on his disability and shirk their responsibility to provide accommodations for Plaintiff's disability which was proximately caused by Defendants.

169.    As alleged throughout this complaint but for Plaintiff's disability, he would not have been discharged as Defendants could no longer utilize Plaintiff to perform unreasonable physical, out of duty tasks to cut its labor costs.

170.    Based on Defendants' discriminatory discharge based on his disability and failure to provide reasonable accommodations Plaintiff seeks back pay, front pay, compensatory including emotional distress or mental anguish damages, punitive damages and statutory attorney fees and costs

## FOURTH CAUSE OF ACTION

**Discrimination based on sex/ gender pursuant to NYS HRL §296 et seq**.

171.     Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

172.     The New York State Human Rights Law §296 states in relevant part, "1. It shall be an unlawful discriminatory practice: (a) For an employer…because of an individual's …sex…to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

173.     As alleged throughout this Complaint, Plaintiff was in a protected class based on his male sex / gender.

174.     As alleged throughout this Complaint, but for Plaintiff's male sex/gender, Plaintiff would not have been ordered to remove the subject machine from ANNIKA's office to the street that caused him fall and sustain disabling injuries on or about May 18, 2022.

175.     As alleged throughout this Complaint, on or about May 18, 2022, Defendants did not order any female co-workers of Plaintiff to remove or assist in the removal of the subject 200+ lbs machine.

176.     As alleged throughout this Complaint but for Defendants' discrimination against Plaintiff based on his male sex/gender, he would not have been ordered to remove an unreasonably heavy machine and sustained his subject injuries and subsequently diagnosed as disabled.

177.     As alleged throughout this Complaint, Defendants' order to Plaintiff to remove the subject machine was the direct or proximate cause of Plaintiff's subject injuries.

178.     As alleged throughout this Complaint, as a result of Plaintiff's subject injuries, Plaintiff suffered physical pain, numbness in his extremities and emotional distress / mental anguish.

179.    As alleged throughout this Complaint, but for Plaintiff's male sex/gender, he would not have suffered his subject injuries on or about May 18, 2022.

180.    As alleged throughout this Complaint, but for Plaintiff's male sex/gender, he would not have been terminated.

181.    Based on Defendants' discrimination based on Plaintiff's sex/gender that caused Plaintiff's subject injuries, disability and discharge, Plaintiff seeks to recover: back pay, front pay, compensatory including emotional distress or mental anguish damages, punitive damages, attorneys fees and costs.

**FIFTH CAUSE OF ACTION**
Retaliation under NYS HRL §296 et seq.

182.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

183.    The NYS HRL §296 (7)  states in relevant part, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

184.    As alleged throughout this Complaint, on or about July 2022, Plaintiff was diagnosed with a disability from his subject injuries sustained on or abou tMay and on or about August 29, 2022 Plaintiff requested to apply his accrued PTO for further medical treatment and to attend physical therapy sessions for his subject injuries proximately caused by Defendants.

185.    As alleged throughout this complaint, Plaintiff was warned by Koch on or about July 2022 that he took too much time off for medical treatments and/or physical therapy.  Shortly thereafter, in response to this warning, Plaintiff's physician sent a letter to Defendants stating that Plaintiff

required physical therapy and medical appointments to recover as well as the insurance company for coverage. Notwithstanding warnings by Koch and in protest of Defendants' unlawful policy and practices, Plaintiff who was in dire need of physical therapy requested to apply his accrued PTO/sick hours to obtain further medical treatment and/or physical therapy.

186. As alleged throughout this complaint, Plaintiff opposed Defendants' improper employment practice of assigning dangerous out of duty physical tasks to Plaintiff. On or about May 19, 2023, Plaintiff complained to Defendant Bhuyan that the cause of his subject injuries and physical pain was, "Thanks to the humiliation of Sr. scientists by asking them to lift and carry a 200 pound old shaker, or a huge autoclave to/from a parking lot on the other side of the street." Plaintiff further stated, that because of the injuries he sustained the day before, he experienced extreme pain in his joints and was not able to sleep, was unsteady and lightheaded.

187. As alleged throughout this Complaint, on or about August 29, 2022, Plaintiff was summarily denied any accommodations and discharged in close temporal proximity to the subject incident and/or Plaintiff's request for an accommodation and/or opposing Defendant's unlawful employment practices in an email dated on or about May 19, 2022 and/or Plaintiff's medical doctor's letter sent in protest of Koch's July 2022 warnings that Plaintiff took too much time off for medical treatment and/or physical therapy.

188. As alleged throughout this Complaint, Plaintiff did not have any history of discipline or unsatisfactory work performance prior to the subject incident or subject injuries sustained on or about May 18, 2022.

189. As alleged throughout this complaint, Defendant had no legitimate business reason to terminate Plaintiff's employment at any relevant time.

190.    As alleged throughout this complaint, Defendants had several work schedule modifications available for Plaintiff to make up work hours at the time he was warned about taking too much time for medical treatment and at the time Plaintiff was denied accommodations and/or discharged.

191.    As alleged throughout this complaint, Defendant retaliated against Plaintiff because it could no longer assign him heavy manual tasks so that Defendants could cut labor costs in hiring professionals to perform those out of duty tasks properly and safely and for complaining to Defendant about this unlawful practice.

192.    As alleged throughout this complaint, Defendant retaliated against Plaintiff because he opposed Defendant's unlawful practice of denying his rightful application of his accrued and unused PTO/ sick hours to seek medical treatment.

193.    As a result of this retaliation and/or denial of accommodations and/or discharge, Plaintiff has suffered emotional distress and mental anguish including but not limited to: depression, anxiety, hopelessness, sadness, loss of enjoyment of life and sleeplessness in addition to that incurred after the subject incident because Plaintiff has not been able to obtain comparable employment despite numerous job applications that required disclosure of his disability and discharged status.  To date, Plaintiff has not been offered any comparable employment by any employer.

194.    As alleged throughout this complaint, Defendants' retaliation and adverse employment actions taken against Plaintiff set an oppressive precedent that would deter other employees of Defendant from rightfully refusing to engage in dangerous activities, obtaining necessary medical attention and taking their lawful and necessary PTO/sick time from work for work related injuries

195.    Based on Defendants' retaliation and adverse employment actions taken against Plaintiff, Plaintiff seeks back pay, front pay, compensatory and punitive damages and statutory attorney fees and costs.

**SIXTH CAUSE OF ACTION**
Discrimination based on disability pursuant to NYC Human Rights Law
NYC Admin. Code 8-107 et seq.

196.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

197.    New York City Administrative Code §8-107(1)(a) states in relevant part, "It shall be an unlawful discriminatory practice for an employer…because of the actual or perceived …disability…of any person: …(2) …to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment."

198.    The term "disability" is broadly defined under the NYCHRL as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Administrative Code § 8-102(16)(a).

199.    An employer is required under the NYCHRL to "make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the [employer]." N.Y.C. Administrative Code § 8-107(15)(a).

200.    An employer is liable for disability discrimination if the adverse employment action taken by the employer was caused at least in part by discriminatory or retaliatory motives.

201.    As alleged throughout this Complaint, Plaintiff was a qualified employee.

202.    As alleged throughout this Complaint Plaintiff had an actual diagnosis of disability on or about July 2022 and was perceived disabled on or about May 18, 2023 when Plaintiff complained in an email to Bhuyan that his joints were in extreme pain and needed medical attention.

203.    As alleged throughout this complaint, in the May 19, 2023 email, Plaintiff further complained that the subject injuries and pain were due to Defendant's improper employment practices of assigning dangerous out of duty tasks to him which was to remove an unreasonably heavy 200+lb machine from another scientist's lab without proper assistance or tools.

204.    As alleged throughout this Complaint, Plaintiff was treated adversely or differently based on his male sex/gender and disability in a way that disadvantaged him.

205.    As alleged throughout this complaint, Plaintiff was treated differently and adversely because of his male sex/gender than his female counterparts because Defendants did not order other female scientists to remove or assist in removing the subject machine that caused Plaintiff to sustain disabling physical injuries.

206.    As alleged throughout this Complaint, Plaintiff was treated differently and adversely because of his male sex/gender than his female counterparts after Plaintiff sustained his subject injuries and ultimately discharged because Defendants could no longer order him to perform out of duty tasks to cut labor costs in hiring professional movers or a heavy industrial waste removal company to perform such tasks properly and safely.

207.    As alleged throughout this Complaint, based on Plaintiff's formal diagnosis of disability on or about July 2023, Plaintiff requested an accommodation on or about August 29, 2023 to apply his rightfully accrued PTO / sick hours to go to further medically prescribed physical therapy sessions and medical appointments.

208.    As alleged throughout this Complaint, Defendant failed to engage in any dialogue about potential accommodations such as modified work schedules and summarily discharged him the next day, August 30, 2023.

209.    As alleged throughout this Complaint, Plaintiff was disadvantaged because he was suddenly discharged based on his disability and did not have an opportunity to secure other employment.

210.    As alleged throughout this Complaint, Plaintiff was disadvantaged because this disability status proximately caused by Defendant caused Plaintiff to disclose on his job applications that he was disabled and discharged by his former employer. To date, Plaintiff has not been offered any comparable employment.

211.    As alleged throughout this Complaint, Defendants knew or should have known that Plaintiff needed an accommodation as it was on notice of Plaintiff's subject incident, subject injuries, medically prescribed physical therapy sessions and medical appointments at all relevant times.

212.    As alleged throughout this Complaint, the circumstances surrounding the denial of accommodations and discharge gave rise to an inference of discrimination under the NYC HRL.

213.    As a result of this retaliation and discharge, Plaintiff has suffered emotional distress and mental anguish including but not limited to: depression, anxiety, hopelessness, sadness, loss of enjoyment of life and sleeplessness because he has not been able to obtain comparable employment despite numerous job applications.

214.    Based on Defendant's discriminatory discharge and denial of any and all accommodations, Plaintiff seeks back pay, front pay, compensatory including emotional distress / mental anguish damages, punitive damages and statutory attorney fees and costs pursuant to the NYC HRL.

## SEVENTH CAUSE OF ACTION

Discrimination based on sex/gender, height and weight pursuant to NYC Human Rights Law
NYC Admin. Code §8-107 et seq

215.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

216.    New York City Administrative Code §8-107(1)(a) states in relevant part, "It shall be an unlawful discriminatory practice for an employer…because of the…gender…height, weight of any person: …(2) …to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

217.    As alleged throughout this Complaint, Plaintiff is of the male sex/gender with relatively taller height and larger weight than his female co-workers present before and during the subject incident that occurred on or about May 18, 2022.

218.    As alleged throughout this Complaint on or about May 18, 2022, Plaintiff was treated differently and adversely than his female co-workers by being asked to remove the subject machine that caused him to fall and sustain disabling subject injuries.

219.    As alleged throughout this Complaint, the female co-workers and Defendant Jorgenson were present before and throughout the subject incident that occurred on or about May 18, 2022.

220.    As alleged throughout this Complaint the female co-workers / scientists were never asked on May 18, 2022 to remove or assist in removing the subject machine that they used for their work.

221.    As alleged throughout this Complaint, after witnessing Plaintiff fall and the machine fall on top of the Plaintiff and that Plaintiff was injured and having difficulty getting up, none of the female employees and Jorgenson even attempted to help Plaintiff get up or request medical assistance.

222.    As alleged throughout this complaint but for Plaintiff's male gender, he would not have been ordered to remove the machine.

223.    As alleged throughout this complaint but for Plaintiff's male gender, he would not have been injured.

224.    As alleged throughout this complaint but for Plaintiff's male gender, Jorgenson and the female co-workers would have assisted Plaintiff immediately after his fall.

225.    But for Plaintiff's male gender Jorgenson and the female employees would have helped Plaintiff after he fell.

226.    As alleged throughout this complaint, but for Plaintiff's male gender, he would have been provided accommodations for his disability as Defendants did not require female employees to move heavy equipment so that Defendants could cut labor costs for professionals to safely and properly perform such tasks.

227.    As alleged throughout this Complaint, but for Plaintiff's male gender, he would not have been discharged as Defendants did not use female employees to cut labor costs for heavy labor.

228.    Based on Defendants' adverse employment actions taken against Plaintiff of discharge and/or denial of any accommodations for his disability and/or denial of any discussion or interactive process of any potential accommodations for his disability based on Plaintiff's male gender, Plaintiff seeks back pay, front pay, compensatory including emotional distress/mental anguish damages, punitive damages and statutory attorney fees and costs pursuant to the NYC HRL

## **EIGHTH CAUSE OF ACTION**

Defendant's failure to engage in the interactive process of providing a work accommodation pursuant to the NYC HRL 8-107(28)(a)

229.    Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

230.    HRL 8-107 (28)(a) states, "It shall be an unlawful discriminatory practice for an employer…to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation."

231.    Under the NYC HRL §8-107 (28)(a), "a failure to engage in the interactive process is independently actionable as a separate claim, which provides that 'it shall be an unlawful discriminatory practice for an employer ... to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the employer has notice may require such an accommodation ... related to a disability." *Greenbaum v. N.Y. City Transit Auth.*, 21-1777, 2022 U.S. App. LEXIS 22589, at *15-16 (2d Cir. Aug. 15, 2022); *See also Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 64-65 (N.Y. App. Div. 1st Dept. 2020)

232.    As alleged throughout this Complaint, from on or about May 18, 2022, Plaintiff had a disability within the meaning of NYC HRL which defines disability as "any physical, medical, mental or psychological impairment."

233.    As alleged throughout this Complaint, on or about May 18, 2022, Plaintiff was diagnosed by a medical doctor with left knee and lower and upper back spinal injuries that required Plaintiff to take pain medication, impaired his physical mobility and required regular physical therapy sessions approximately twice a week.

234.    As alleged throughout this Complaint, Plaintiff was diagnosed with a disability due to his subject injuries, based on MRIs by his medical doctors.

235.    As alleged throughout this Complaint Defendants knew or should have known of Plaintiff's subject incident on or about May 18, 2022, subject injuries, diagnosed disability and Plaintiff's need for an application of PTO/sick hours accommodation, need for a modified work schedule accommodation, or other comparable accommodation.

236.    The standard under the NYC HRL is whether under the totality of the circumstances, Plaintiff was treated adversely or less well based on his/her disability.

237.    As alleged throughout this complaint, on or about May 18, 2022, Plaintiff was treated differently than his female co-workers because Defendant did not order other female employees to move or assist in moving excessively heavy machines that caused Plaintiff to sustain disabling physical injuries and mental anguish.

238.    As alleged throughout this complaint, Plaintiff was treated differently and adversely because of his male sex/gender than his female co-workers after Plaintiff sustained his subject injuries/ disability and ultimately discharged because Defendants could no longer order him to perform out of duty tasks such as removing and discarding excessively heavy machinery to cut labor costs in hiring professional movers or a heavy industrial waste removal company to perform such tasks properly and safely.

239.    As alleged throughout this complaint, there were several accommodations options available at the time Plaintiff was discharged such as a hybrid remote/in person modified work schedule or a weekend modified work schedule.

240.    As alleged throughout this complaint, Plaintiff requested an accommodation on or about August 29, 2022 and was summarily denied any opportunity to discuss any potential accommodation.  Instead, Plaintiff was terminated from employment the next day on or about August 30, 2022.

241.     As alleged throughout this Complaint, Defendant failed to conduct any cooperative dialogue or any interactive process about potential accommodations within a reasonable time or at any time whatsoever prior to Plaintiff's discharge.

242.     Based on Defendant's adverse employment actions taken against Plaintiff of discharge and/or denial of any accommodations without any discussion or interactive process of any potential accommodations based on Plaintiff's disability, Plaintiff seeks back pay, front pay, compensatory including emotional distress or mental anguish damages, punitive damages and statutory attorney fees and costs pursuant to the NYC HRL.

**SEVENTH CAUSE OF ACTION**
Retaliation under the NYC HRL

243.     Plaintiff repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein

244.     Under the NYC HRL, employers are prohibited from retaliating or discriminating in any manner because such a person…has opposed any practice forbidden under the NYC HRL.

245.     The retaliation under the NYC HRL is prohibited where it is reasonably likely to deter a person from engaging in protected activity such as complaining about practices and policies of the employer that unlawfully requires employees to perform dangerous out of duty tasks or prevents employees from applying their rightfully earned/accrued benefits such as PTO / sick hours to obtain medical treatment, especially for injuries that were caused by the employer.

246.     As alleged throughout this Complaint, Defendant retaliated against Plaintiff by discharging him and summarily denying any accommodations when Plaintiff engaged in protected activity including but not limited to:  demanding his right to use his accrued PTO/ sick hours for medical treatment on or about August 29, 2022 after Koch warned Plaintiff on or about July 2022 that he was taking too much PTO for medical treatment and in response to Koch's warning on or about

July 2022, Plaintiff's physician sent a letter to Defendants stating that Plaintiff required physical therapy to recover as well as the insurance company for coverage.

247.    As alleged throughout this Complaint, Defendant retaliated against Plaintiff by discharging and summarily denying accommodations because Plaintiff complained in an email dated on or about May 19, 2022 about its improper employment practices of assigning dangerous out of duty task to Plaintiff that caused the subject disability.

248.    As alleged throughout this Complaint, Defendants retaliated against Plaintiff by denying any accommodations when it knew Plaintiff needed work schedule modifications but discharged Plaintiff in close temporal proximity to Plaintiff's protected activities.

249.    As alleged throughout this Complaint, Defendants treated Plaintiff differently than other non-disabled and/or female employees.

250.    As alleged throughout this Complaint, Plaintiff complained to Defendants about this different treatment.

251.    Based on Defendants' retaliatory conduct, other similarly situated employees of the AANIKA would be deterred in refusing to perform unreasonable or dangerous tasks or to complain about Defendants' unreasonable work policies and practices, or Defendants' discriminatory practices based on disability and/or sex/gender.

252.    Based on Defendants' retaliation and adverse employment actions taken against Plaintiff, Plaintiff seeks back pay, front pay, compensatory including emotional distress or mental anguish damage, punitive damages and statutory attorney fees and costs under the NYC HRL.

<u>Prayer for Relief</u>

Based on the foregoing, Plaintiff respectfully requests that this Court order and:

(1)    declare that Defendant AANIKA and individual Defendants Bhuyan and Jorgenson (collectively, "Defendants") are liable for having directly engaged in unlawful and discriminatory employment practices under the ADA 42 USC 12101 et seq., NYS HRL 296 et seq. and NYC HRL 8-102 et seq.  and acted in concert or aided and abetted in discrimination and retaliation so that Defendants jointly and severally:

    a)  Discriminated against Plaintiff based on his disability by failing to provide reasonable accommodations;

    b)  Discriminated against Plaintiff based on his disability by discharging him;

    c)  Retaliated against Plaintiff by discharging him for requesting accommodations for his disability including available work schedule modifications at little to no additional costs to Defendants; and

    d)  Retaliated against Plaintiff by discharging him in close temporal proximity of Plaintiff's protected activities of complaining / opposing Defendants' unlawful employment policies and practices including but not limited to: assigning Plaintiff to unreasonable and dangerous out of duty tasks that injured him and caused his disability, unreasonable withholding of Plaintiff's accrued PTO/sick hours, and unreasonably withholding reasonable accommodations for his disability; and

(2) declare that Defendants engaged in unlawful and discriminatory employment practices under the NYS HRL §296 et seq. and NYC HRL §8-102 et seq. that Defendants

    (a) Discriminated against Plaintiff based on male sex/gender by ordering Plaintiff to remove an unreasonably heavy machine that Defendants did not require of their female staff and directly or proximately caused Plaintiff's subject injuries and subsequent disability; and

(b) Discriminated against Plaintiff based on male sex/gender in denying Plaintiff an accommodation because Defendants could no longer order Plaintiff to perform unreasonably dangerous tasks such as moving unreasonably heavy machines that they did not require from female staff in order to cut labor costs; and

(c) Discriminated against Plaintiff based on male sex/gender in discharging Plaintiff because Defendants could no longer order Plaintiff to perform unreasonably dangerous tasks such as moving unreasonably heavy machines that they did not require from female staff in order to cut labor costs; and

(3) declare that Defendant engaged in unlawful and discriminatory employment practices under NYC HRL §8-102 et seq. that Defendant:

(d) Discriminated against Plaintiff based on disability under the NYC HRL by failing to engage in a cooperative dialogue about accommodations with Plaintiff within a reasonable time; and

(e) Discriminated against Plaintiff due to his height and weight that was relatively larger than his female co-workers.

(3) Award back pay in an amount to be determined at the time of trial pursuant to the ADA, NYS HRL and NYC HRL; and

(4)    Award front pay in an amount to be determined at the time of trial under the ADA, NYS HRL and NYC HRL; and

(5)    Award compensatory damages including emotional distress or mental anguish damages in an amount to be determined at the time of trial under the ADA, NYS HRL and NYC HRL; and

(6)    Award punitive damages in an amount to be determined at the time of trial under the ADA, NYS HRL and NYC HRL; and

(7)     Award attorneys fees and costs pursuant to the under the ADA, NYS HRL and NYC

HRL; and

(8)     Award any and other further relief that this Court deems just and proper.

Dated:  New York, NY
        July 23, 2024

                                        Nisar Law Group, PC
                                        Attorneys for Plaintiff


                                        _____
BY:     Susan Ghim, Of Counsel
        60 East 42nd Street, Suite 4600
        New York, NY 10165
        Email: SGhim@Nisarlaw.com
        Phone: 646-889-1011